UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN MCPETERS, individually and on behalf of those individuals, persons, and entities who are similarly situated, | § § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:10-cv-1103 |
| | § | |
| THE HONORABLE FREDERICK E. EDWARDS; BARBARA GLADDEN ADAMICK, DISTRICT CLERK; MONTGOMERY COUNTY, TEXAS; and REED ELSEVIER, INC., d/b/a LEXISNEXIS, | § § § § § § § | |
| | § | |
| Defendants. | § | |

AMENDED MEMORANDUM AND ORDER

THE MEMORANDUM AND ORDER DATED JANUARY 27, 2011 IS WITHDRAWN, AND THIS AMENDED MEMORANDUM AND ORDER IS SUBSTITUTED.

This Amended Memorandum and Order is issued after the Court had the opportunity to review the parties' briefing and arguments regarding Plaintiff's Motion for Reconsideration (Doc. No. 101).

Pending before the Court are Motions to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 19) filed by Defendants the Honorable Frederick E. Edwards ("Judge Edwards") (Doc. No. 56), Barbara Adamick, District Clerk ("Adamick") and Montgomery County, Texas ("Montgomery County") (Doc. No. 51), and LexisNexis, a

division of Reed Elsevier Inc. ("LexisNexis") (Doc. No. 49).[1] After considering the parties' arguments and the applicable law, the Court **GRANTS** Defendants' Motions to Dismiss and **DENIES** Plaintiff's Motion to Reconsider and Motion for Leave to File a Third Amended Complaint.

## I.      Background[2]

Plaintiff, a Texas resident, filed a civil employment discrimination lawsuit in the 9th District Court of Montgomery County, Texas on May 18, 2007. *McPeters v. Montgomery County*, Cause No. 07-09-09142-CV ("*McPeters I*"). *McPeters I* was assigned to Judge Edwards, who designated it as an electronic filing ("e-filing") case subject to the provisions of an order he had signed on February 10, 2003 in his capacity as presiding judge of the 9th Judicial District ("2003 Order"). (*See* Doc. No. 19-1, at 1-2; Doc. No. 13-2.)  The 2003 Order provides that "all civil cases filed in the 9th District Court of Montgomery County will be electronically filed as described and governed by the Local Rules Regarding Electronic Filing" and contains a blank line in which a cause number may be written to designate that case as "an e-file case." It states further that "Documents may still be filed conventionally if 1) a party has leave of Court to do so . . . ." It also specifies that "all original petition [sic] for divorce or annulment that are resolved within 90 days are not required to be filed electronically." The 2003 Order describes the e-filing system as follows:

> In short, parties will be presented with two options. They may either: 1) become a subscriber through the Internet to the e-file system or 2) bring

---

[1] Plaintiff has since filed a Motion for Leave to File a Third Amended Complaint (Doc. No. 71), which Defendants oppose. The Court held a hearing on that motion on August 31, 2010 and stated that it will rule on Defendants' motions to dismiss based on Plaintiff's Second Amended Complaint.

[2] Except as noted, these facts are taken from Plaintiff's Second Amended Complaint (Doc. No. 36) and are assumed to be true for purposes of the Motion to Dismiss. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

> their filings in the form of 3-1/2" IBM (or compatible_formatted [sic] disc to the public terminal located in the District Clerk's Office and upload the pleadings at no charge).
> Although there is no fee involved in subscribing to the e-file system [sic] through the Internet, a minimal fee is assessed for each filing and service delivery made through the system. . . .

Finally, the 2003 Order states that the District Clerk will reject any pleadings filed in paper form except as specified in the Order, and that they will be considered "unfiled." (*Id.*) The 2003 Order was not e-filed in *McPeters I*, and Plaintiff alleges that she did not see a copy of the order until May 5, 2010. However, the District Clerk's Record of *McPeters I* notes that, on January 27, 2009, in response to a telephone call with Plaintiff's attorney Robert Mays regarding e-filing, the clerk "RETURNED HARD COPY DISCOVERY TO HIM W/ COPY OF EFILE ORDER." (Doc. No. 59-3, at 1.)

Plaintiff filed a second case in the 9th District Court in 2009, a petition under Texas Rule of Civil Procedure 202 to conduct depositions to investigate potential claims, specifically to challenge the imposition of e-filing in *McPeters I. McPeters v. Adamick*, Cause No. 09-11-11474-CV ("*McPeters II*"). The Montgomery County clerk's office returned the Rule 202 Petition with a "VOID" stamp on it, which Plaintiff alleges Adamick placed there. The 2003 Order was also made applicable to *McPeters II*, and on November 25, 2009, Plaintiff was mailed a copy of the order, which she acknowledges she received.

Montgomery County has contracted with LexisNexis, which provides e-filing services to litigants in the county. LexisNexis charges $7.00 for filing fees, $8.00 for service charges for any document filed online, and a charge of at least $10.00 for providing a paper invoice. Plaintiff alleges that LexisNexis pays $1.00 of each filing and service charge to Montgomery County. LexisNexis is used by 38 states for e-filing.

Plaintiff alleges that she was forced to e-file using the LexisNexis system under the threat of having her documents returned unfiled.

Plaintiff brings this suit as a putative class action, seeking an injunction, damages, fees, and costs. Plaintiff argues that the e-filing system and its imposition in her case violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; the due process and equal protection provisions of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; the separation of powers, equal protection, open courts, and due course of law provisions of the Texas Constitution; the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001, *et seq.* (Vernon's 2005); and common-law fraud, conspiracy, and violation of statutory duties. The Court held oral argument on Defendants' Motions to Dismiss on December 9, 2010, and on Plaintiff's Motion to Reconsider on April 6, 2011.

## II.    Legal Standard for Motions to Dismiss

### A.  Fed. R. Civ. P. 12(b)(1)

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum.  *Stockman*, 138 F.3d at 151.

**B.**     **Fed. R. Civ. P. 12(b)(6)**

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365

F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (internal citation omitted).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). In such cases, the pleadings "must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

### III.    Due Process and Equal Protection

Plaintiff alleges that Defendants' conduct violated the Due Process and Equal Protection clauses of the U.S. Constitution.[3] The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property,

---

[3] The Second Amended Complaint explicitly pleads a cause of action for equal protection only under the Texas Constitution, but the Court will construe the complaint liberally to include a federal equal protection claim under 42 U.S.C. § 1983.

without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." With regard to equal protection, "if a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). However, "if a classification does target a suspect class or impact a fundamental right, it will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007) (citing *Plyler v. Doe*, 457 U.S. 202, 217-18 (1982)). Similarly, substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).[4]

Plaintiff argues that, because "open courts" is a fundamental right, the requirement that she e-file, and pay the resulting fees to LexisNexis, placed an improper burden on that right. She also argues that the order requiring certain types of litigants, but not others, to e-file, was an improper classification that affects a fundamental right.[5] The Court is unconvinced by Plaintiff's constitutional arguments.

The Supreme Court has described "access to the courts" as a "fundamental constitutional right." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Accordingly, states must, for example, provide transcripts to indigent criminal defendants for appeals as of right. *Griffin v. Illinois*, 351 U.S. 12 (1956). However, the Supreme Court has not always

---

[4] Plaintiff also alleges a violation of procedural due process in her complaint, but does not elaborate any theory for such a claim in her briefing.

[5] Plaintiff also points to Texas state cases, such as *LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex. 1986), and the open courts provision of the Texas Constitution in support of her Section 1983 claims. Violations of state law are not cognizable under Section 1983, however, because that provision "is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). Therefore, the state law authority Plaintiff cites is irrelevant to the Court's Section 1983 inquiry.

found filing fees with no indigence waiver to be unconstitutional. Although filing fees must be waived for indigent litigants filing for divorce, *Boddie v. Connecticut*, 401 U.S. 371 (1971), they need not be in filing for bankruptcy, *United States v. Kras*, 409 U.S. 434 (1973), or in seeking judicial review of a denial of welfare benefits. *Ortwein v. Schwab*, 410 U.S. 656 (1973). *Kras* distinguished the *Boddie* ruling on the grounds that "[t]he Boddie appellants' inability to dissolve their marriages seriously impaired their freedom to pursue other protected associational activities, while Kras's interest in eliminating his debt burden through bankruptcy, "although important," did "not rise to the same constitutional level." 409 U.S. at 444-45. The Court found that a rational basis test applied because:

> Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental and that demand the lofty requirement of a compelling government interest before they may be significantly regulated.

*Id.* at 446. The *Kras* court also distinguished *Boddie* because, "In contrast with divorce, bankruptcy is not the only method available to a debtor for the adjustment of his legal relationship with his creditors." *Id.* at 445. Two months later, the *Ortwein* court followed the same reasoning and held that there was "no fundamental interest that is gained or lost depending on the availability of the relief sought by appellants." 410 U.S. at 659 (quoting *Kras*). "In sum, as *Ortwein* underscored, th[e] Court has not extended *Griffin* to the broad array of civil cases," although it "has consistently set apart from the mine run of cases those involving state controls or intrusions on family relationships." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (holding that parental status termination proceeding implicated fundamental right). Thus, the Supreme Court has held that the right of access to courts

does not prohibit filing fees (even with no waiver for indigent litigants) where the lawsuit does not implicate a fundamental right other than access to courts.

In her supplemental brief in support of her Motion for Reconsideration (Doc. No. 106), Plaintiff argues that the nature of her underlying state-court lawsuit—a claim of retaliation for protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*—constitutes a fundamental right, and so strict scrutiny should apply. At oral argument, Defendants argued that, although the suit concerned employment discrimination, it sought only money damages, and so did not implicate a fundamental right.

A lawsuit seeking to vindicate the right to be free from employment discrimination almost certainly implicates a fundamental right. The clear mandate that a person has the right to be free from discrimination is evidenced by the Fourteenth Amendment's guarantee of "equal protection of the law." In addition, the "fundamental purposes" of Title VII are "to afford the possibility of administrative and judicial relief to employees who are subject to employment discrimination." *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450 n.3 (5th Cir. 1983); *see also* 42 U.S.C. § 2000e-5 (enforcement provisions of Title VII). Thus, an employment discrimination lawsuit "involves interests of basic importance in our society." *Kras*, 409 U.S. at 443-44 (quoting *Boddie*, 401 U.S. at 374).

Moreover, as with divorce—but not bankruptcy or welfare benefits—the courts are the "only method available" to vindicate that right to be free from discrimination in the manner Plaintiff sought. *See id.* at 445. "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be

valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion) (rejecting "the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated"); *see also Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("By making the deprivation of [certain 'absolute'] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed"). "The Supreme Court has emphasized on numerous occasions that an individual plaintiff pursuing claims under the civil rights laws, including Title VII of the 1964 Act, is 'cast . . . in the role of a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 465 (S.D.N.Y. 1997) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978)). Thus, Defendants' efforts to portray employment discrimination claims for money damages as strictly economic fails.

Nor can it be said that administrative remedies are sufficient to vindicate a plaintiff's right to be free from discrimination. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64 (1980) ("the 'ultimate authority' to secure compliance with Title VII resides in the federal courts"); *Gamble v. Birmingham Southern R. Co.*, 514 F.2d 678, 688 n.5 (5th Cir. 1975) ("[Title VII] does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts."). When an individual has allegedly suffered a violation of a right as deeply ingrained in the Constitution and laws of the United States as the right to be free from discrimination, she is entitled to seek the official

vindication that only a day in court can provide. However, the Court need not conclusively decide this issue, because reasonable alternatives were available to e-filing, so Plaintiff's constitutional claims fail on other grounds.

Contrary to Plaintiff's contention, Defendants did not *require* Plaintiff to e-file and pay fees and costs to LexisNexis in order to litigate her suit. Rather, the 2003 Order provides for two alternatives to e-filing: a party may obtain leave of the court to file her documents conventionally[6]; or she may bring her filings on a computer disk to the public terminal located in the District Clerk's Office and upload the pleadings at no charge. (*See* Doc. No. 19-1, at 1-2; Doc. No. 13-2.) Thus, unlike the line of cases discussed above in which no waiver was available for indigent litigants, the system in place in Montgomery County provides alternatives to e-filing charges.[7] Plaintiff does not allege that she attempted to use either of these alternative means and was unable to do so.

The Court also finds that Plaintiff had sufficient notice of the alternatives to e-filing to require her to make some attempt to use them. Plaintiff's counsel now acknowledges that he received a copy of the 2003 Order on January 30, 2009. (Doc. No. 101, at 9.) Plaintiff also acknowledges in her Second Amended Complaint that she received a copy of the 2003 Order in *McPeters II* in November 2009. And a letter sent from Adamick to Plaintiff's counsel in *McPeters II*, which stated that Plaintiff's pleadings had been rejected, specifically noted that "you may file from the Public Access Terminal located in the District Clerk's office." (Ex. C to 2d Am. Compl., Doc. No. 19-1,

---

[6] At the hearing on the Motion to Reconsider, Plaintiff's counsel, referring to the second page of the 2003 Order, argued that leave of the court to file manually is only available in specific situations involving technical errors with e-filing. (*See* Doc. No. 19-1, at 2.) However, that argument ignores the broader language on the previous page: "Documents may still be filed conventionally if 1) a party has leave of Court to do so . . . ." (*Id.*, at 1.)

[7] Plaintiff does not contend that she has been indigent at any time relevant to this case.

at 25.) Thus, Plaintiff was on notice of the availability of alternatives to e-filing charges, yet made no attempt to use them.

Therefore, Plaintiff was not forced to e-file and to pay the corresponding charges in order to access the courts. Instead, she could have sought leave of the court to manually file documents, or used the public access terminal. The e-filing charges were not a barrier to her access to the courts because alternatives to e-filing existed.[8] Therefore, Plaintiff has not stated a constitutional claim.[9]

## IV.   RICO

RICO provides for civil liability for activities in violation of 18 U.S.C. § 1962. *Id.* at § 1964. In order to successfully bring an action under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) ("any RICO claim necessitates 1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control of an enterprise") (citation omitted). Defendants contend that Plaintiff has failed adequately to allege the necessary elements of a RICO claim.

### A.  Existence of an "Enterprise"

Defendants first argue that Plaintiff has not sufficiently alleged the existence of an "enterprise" as required by RICO. Under the statute, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or

---

[8] Plaintiff also alleges that the "'public access terminal' . . . unconstitutionally restricts each litigant's access to the courts" because "[i]f Judge Edwards has 1,161 active E-filing cases, then **each litigant would be entitled to 10 minutes of time every two months."** (Doc. No. 19, ¶ 78 (emphasis in original).) However, this is mere speculation, as Plaintiff does not claim to have attempted to use the public access terminal, and does not allege that the public access terminal is actually so crowded as to restrict the time available to each litigant in any way.

[9] Because the Court finds that Plaintiff has not stated a constitutional claim, the Court need not reach Defendants' other grounds for dismissing those claims.

group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961.

"[A]n association-in-fact enterprise is 'a group of persons associated together for a

common purpose of engaging in a course of conduct,'" and "must have at least three

structural features: purpose, relationships among those associated with the enterprise, and

longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle

v. United States*, 129 S.Ct. 2237, 2244 (2009) (quoting *Turkette*, 452 U.S. at 583).

Plaintiff alleges that Judge Edwards, Adamick, Montgomery County, and LexisNexis

constitute an association-in-fact, and an enterprise with the purpose of "mandating that

Karen McPeters, and similarly situated litigants, and their attorneys, participate in E-

filing in Montgomery County." (Doc. No. 19, ¶ 103-05.) Plaintiff refers to "mandatory,

enforced E-Filing" as "the Plan," and to the participants in "the Plan" (Defendants) as

"the E-File Racket."   (*Id.*, ¶ 104.) Finally, Plaintiff alleges that, with "Judge Edwards as

its head, Barbara Adamick and Montgomery County as enforcer, and LexisNexis as its

collector[,] Defendants are an association-in-fact using money derived from a pattern of

racketeering activity to conduct the enterprise through a pattern of racketeering activity."

(*Id.*, ¶ 105.)

As a preliminary matter, the Court finds that Plaintiff's failure "to allege an

existence separate and apart from Defendants' alleged racketeering activities" is not

necessarily "fatal to [her] claim." *County of El Paso v. Jones*, 2009 WL 4730303, at *22

(W.D. Tex. Dec. 4, 2009). Defendants argue that Plaintiff must plead "specific facts

which establish that the association exists for purposes other than to simply commit the

predicate acts," and that she has not done so. *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir.

1989); *see also Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 441 (5th Cir.

1987) ("The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'") (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The Court agrees that Plaintiff alleges that the enterprise exists only to order and administer e-filing in cases in Montgomery County courts and that therefore Plaintiff has not alleged that the association exists for any purpose other than to simply commit the predicate acts. In *Boyle*, the Supreme Court recently clarified the requirements for an association-in-fact. 129 S.Ct. at 2244. The Court first noted that "the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" *Id.* at 2245 (quoting *Turkette*, 452 U.S. at 583). The Court then explicitly rejected the idea that "the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity." *Id.* Instead, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Id.* (quoting *Turkette*, 452 U.S. at 583); *see also Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 692 (S.D. Tex. 2009) (Ellison, J.) ("the [*Boyle*] Court found that the enterprise was required to have structure, but it need not have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engaged"); *United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009) ("Simply put, after *Boyle*, an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity."); *but see Young v. Scruggs*, 2010 WL 2301641, at *7 (S.D.Miss. June 7, 2010) ("A RICO association must also be an entity separate and apart from the pattern of activity in which it engages.") (citation omitted).

In this case, however, the allegations of predicate acts—based on Defendants ordering, implementing, and administering the e-filing system—do not suggest the existence of an enterprise; rather, they suggest only that Defendants each had a role in the underlying acts. Although allegations of predicate acts and allegations of an enterprise *may* in some cases coalesce, a plaintiff does not *automatically* allege the existence of an enterprise simply by alleging predicate acts. Furthermore, there is no common purpose between the alleged members of the enterprise. Plaintiff alleges that the common purpose is "mandating that Karen McPeters, and similarly situated litigants, and their attorneys, participate in E-filing in Montgomery County." However, that is not a purpose, but rather a description of the alleged conduct itself. Plaintiff's complaint suggests that, for example, Judge Edwards' purpose in ordering e-filing was to encourage efficiency, while LexisNexis's purpose was to generate profits. Accordingly, Plaintiff has not plausibly alleged the existence of an "enterprise"—an essential element of RICO liability.

### B.  "Pattern of Racketeering Activity"

Defendants also argue that Plaintiff has not adequately alleged two or more acts of racketeering. 18 U.S.C. § 1961(5); *see In re MasterCard Intern. Inc.*, 313 F.3d 257, 261 (5th Cir. 2002) ("A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity."). Such predicate acts are limited to those described in 18 U.S.C. § 1961(1), including acts that are indictable under any of the statutes enumerated in that section.

As RICO predicate acts, Plaintiff alleges that Defendants committed acts that are indictable under several statutes. Plaintiff alleges that Defendants committed mail fraud

in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 by "furnishing a scheme to defraud by furnishing for unlawful use a spurious obligation of litigants to pay for the purpose of executing the scheme" and sending invoices for payments to LexisNexis by mail and wire. (Doc. No. 19, ¶ 142-44.) Plaintiff also alleges that Defendants "obstructed, delayed or affected commerce" in violation of the Hobbs Act, 18 U.S.C. § 1951, "by requiring and obtaining payment from Karen McPeters in furtherance of their Plan" by inducing her consent "by wrongful use of threatened force, or fear, under color of official right." (Doc. No. 19, ¶ 145.)[10] Defendants argue that Plaintiff has not alleged any predicate act sufficiently to state a claim.

### 1.  Mail and Wire Fraud

To state a claim for fraud, a plaintiff must allege:

(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Bradley v. Phillips Petroleum Co.,* 527 F. Supp. 2d 625, 648 (S.D. Tex. 2007) (quoting *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001)). "Specifically with respect to mail fraud, a plaintiff must be able to demonstrate: '(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with [the] scheme, and (4) actual injury to the plaintiff.'" *Id.* (quoting *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)). The Fifth Circuit has also held that, although "reliance" upon the defendants' representations "is not an element of statutory mail or wire fraud," it is required when

---

[10] Plaintiff also alleges conspiracy under 18 U.S.C. § 1349, which is not listed as a predicate act under § 1961(1). Accordingly, that allegation does not suffice to state a predicate act under RICO.

violations of those statutes are alleged as RICO predicates. *MasterCard*, 313 F.3d 257, 263 (5th Cir. 2002). In the absence of alleging an "intent to defraud," such intent is "imputed to civil RICO defendants who act with reckless indifference to the truth or falsity of their representations." *Landry*, 901 F.2d at 429 n.87. "The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim except the use of the wire must be interstate." *Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 846 (E.D. Tex. 2002).

Furthermore, "Fed. R. Civ. P. 9(b) applies to . . . RICO claims resting on allegations of fraud," *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997), and requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Campa v. Nationwide Property & Casualty Ins. Co.*, 2010 WL 3733469, at *1 (S.D. Tex. Sept. 7, 2010) ("Essentially, the standard requires the complaint to allege answers to 'newspaper questions' (who, what, when, where, and how) of the alleged fraud."). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In this case, Plaintiff has not adequately alleged "false or fraudulent pretenses, representation, or premises" or a "scheme to defraud." *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 48 (5th Cir. 1990). Plaintiff's allegations attempt to transform her claim that Defendants lack the authority to impose e-filing and the

accompanying charges into a claim that Defendants committed fraud. Even if Defendants' actions are unauthorized by law, that would not automatically make them fraudulent. Plaintiff presents no plausible allegations that any of the Defendants had either "intent to defraud" or "reckless indifference to the truth or falsity of their representations." *Landry*, 901 F.2d at 429 n.87. Furthermore, she does not allege how the communications themselves "violated federal law." *Elliott v. Foufas*, 867 F.2d 877, 882 (5th Cir. 1989). Plaintiff's allegations thus fail to comply with the heightened pleading requirements of Rule 9(b). She has not properly alleged mail or wire fraud as RICO predicate acts.

### 2. Hobbs Act

The Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). The statute defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* at § 1951(b)(2). The elements of a violation of the Hobbs Act are: "(1) that the defendant induced a person to part with property; (2) the defendant acted knowingly and willfully by means of extortion; and (3) that the extortionate transaction delayed, interrupted, or adversely affected interstate commerce." *United States v. Stephens*, 964 F.2d 424, 429 (5th Cir. 1992). When a plaintiff alleges extortion "under color of official right," there is no requirement of "threat, force, or duress." *United States v. Wright*, 797 F.2d 245, 250 (5th Cir. 1986).

Extortion under color of official right consists of "a public official who t[akes] 'by colour of his office' money that [i]s not due to him for the performance of his official duties." *Evans v. United States*, 504 U.S. 255, 261 (1992). It is the "rough equivalent of what we would now describe as 'taking a bribe.'" *Id.*; *see also id.* at 264 ("the portion of the statute that refers to official misconduct continues to mirror the common-law definition"). In this case, Plaintiff has not alleged any public official sought money, or anything else of value, that was not due to him for the performance of his official duties. Plaintiff alleges nothing remotely equivalent to "taking a bribe." Accordingly, the Court finds that the Hobbs Act does not apply in this case as a RICO predicate act.

Therefore, Plaintiff has failed to allege any predicate acts or a "pattern of racketeering"—another essential element of RICO. Because Plaintiff has not alleged an "enterprise" or a "pattern of racketeering activity," she has failed to state a RICO claim upon which relief may be granted.[11]

## V.      State Law Claims

Plaintiff has not stated a claim upon which relief may be granted under the U.S. Constitution or RICO, and so no federal question remains in this case. The court still has supplemental jurisdiction over Plaintiff's state law claims because they form a part of the same "case or controversy." 28 U.S.C. § 1367(a). However, the court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." *Id.* at § 1367(c). The Court finds it appropriate to decline to exercise supplemental jurisdiction over the state law claims in this case.

---

[11] Because the Court finds that Plaintiff has not alleged essential elements of a RICO claim, the Court need not reach Defendants' other grounds for dismissing the RICO claims.

Although no federal statutory or constitutional claim is available in this case, the Court is indeed troubled by certain aspects of the e-filing system at issue. It is not clear that the e-filing system, and the accompanying fees, were properly adopted within the bounds of applicable Texas law. The Texas Government Code provides that rules and procedures regulating the use of electronic filing systems, including local rules, must be approved by the Texas Supreme Court. Tex. Govt. Code §§ 51.803, 51.807 (Vernon's 2005). Although the Montgomery County Local Rules were approved in 1997, the fees charged by LexisNexis were not specifically approved. (Ex. 2 to Judge Edwards's Mot. to Dismiss 2d. Am. Compl., Doc. No. 56-2.) In addition, the Texas Government Code sets forth filing fees and other fees to be charged by district clerks. Tex. Govt. Code §§ 51.317-19, 101.061-101.0617, 103.021-103-033 (Vernon's 2005). The statute provides that "for performing any other service prescribed or authorized by law for which no fee is set by law" the district clerk shall collect "a reasonable fee." *Id.* at § 51.319. The statute also states:

> A fee under this subchapter is not payable until the district clerk produces, or is ready to produce, a bill for services that contains the particulars of the fee charged before payment of the fee is required. The bill must be signed by the clerk or the clerk's successor in office or legal representative who charges the fee or to whom the fee is due.

*Id.* at § 51.320. It is not clear that under those statutes the district clerk may delegate fee-setting authority to a private company. It is also not clear that there is any limit to the rates LexisNexis could charge, subject only to Montgomery County ceasing to use LexisNexis's services.[12]

---

[12] A contract between Montgomery County and LexisNexis, submitted by Plaintiff as an exhibit, states that the "sole charge for [LexisNexis File & Serve Services] access shall be the Standard Fees set forth on Exhibits B [sic]." (Ex. B to 2d. Am. Compl., Doc. No. 19-1, at 9.) However, the only Exhibit B attached to the contract in Plaintiff's exhibit sets forth only the Standard Service Fee for Serving Orders or Official

It is a bedrock principle of federal and state courts that they should be accessible to persons seeking remedies for their grievances. Charging litigants more than is necessary to subsidize the operation of the courts and other vital government functions is contradictory to the basic idea of access to courts. To give to a private company the authority to profit by setting rates and charging litigants for each court filing seriously endangers that principle and sets forth on a dangerous path. That is particularly so where it is not clear under state law that the district clerk has the power to delegate authority in such a way. Still, the right of access to courts is not absolute, and no federal remedy is available under the facts presented in this case. Plaintiff's claims under the constitution and laws of Texas may or may not have merit, but as no federal question remains in this case, they are properly decided by a state court.

## VI.    Motion for Leave to File Third Amended Complaint

Also pending is Plaintiff's Motion for Leave to File Third Amended Complaint. (Doc. No. 71.) As this is not an amendment as a matter of course, Plaintiff may amend her complaint only with the opposing party's written consent or with the court's leave. Fed. R. Civ. P. 15(a). Courts "should freely give leave when justice so requires." *Id.* However, "[i]t is within the district court's discretion to deny a motion to amend if it is futile," meaning "that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). In this case, Plaintiff has already had the opportunity to file two amended complaints, and still has not stated a federal claim. In addition, none of the reasons given for amending in Plaintiff's motion would change the outcome of the motions to dismiss.

---

Court Notices to Litigants, including providing for "[n]o charge" to "registered . . . users who receive online service." (*Id.* at 19.)

Accordingly, the Court finds that amendment would be futile, and denies leave to amend.[13]

### VII.    Conclusion

For the reasons discussed in this order, Defendants' motions to dismiss are **GRANTED**, without prejudice to Plaintiff filing the state law claims in state court. Plaintiff's Motion to Reconsider and Motion for Leave to File Third Complaint are **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 14th day of April, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[13] Because Plaintiff has not stated a federal claim upon which relief may be granted, the Court also denies Plaintiff's Motion to Certify Class (Doc. No. 86) and Motion for Extension of Time to Join Other Class Members as Parties (Doc. No. 84).